A11A0432. HARDAWAY v. THE STATE.
(710 SE2d 634)

MIKELL, Judge.

After a bench trial, Steven Hardaway was convicted of possession with intent to distribute marijuana and possession of drug related objects and sentenced to ten years to serve five. On appeal, Hardaway argues that the trial court erred when it denied his motion to suppress. He also challenges the sufficiency of the evidence as to his conviction of possession with intent to distribute. We affirm.

1. In his first enumeration of error, Hardaway contends that the trial court erred when it denied his motion to suppress.

> In reviewing a trial court's ruling denying a motion to suppress or in limine, the following three principles apply: First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. Because there was testimonial evidence in this case, we do not apply a de novo standard of review.[1]

So viewed, the evidence shows that Deputy Joshua Lipscomb of the Douglas County Sheriff's Office observed Hardaway as he drove onto the shoulder of the highway, turned on his right blinker, and then

---

[1] (Punctuation, footnotes and emphasis omitted.) *Butler v. State*, 303 Ga. App. 564-565 (694 SE2d 168) (2010).

straddled the white line, causing Lipscomb to initiate a traffic stop. Lipscomb testified that he approached Hardaway's vehicle from the passenger side and asked Hardaway for his driver's license; that Hardaway had shoved his arm between the console and the driver's seat up to his elbow; that it appeared that Hardaway was trying to conceal something; and that Hardaway told him that he was looking for his wallet but ultimately retrieved it from the driver's side visor. Lipscomb further testified that within 30 seconds of receiving the license, he returned to his patrol car and radioed for backup. The backup units arrived while Lipscomb was writing the ticket. Lipscomb approached Hardaway's car again and asked him to step out of the car. Lipscomb asked Hardaway if there were weapons or drugs in the car and then obtained Hardaway's consent to search the car.

As Lipscomb prepared to search the vehicle, Hardaway asked why he had been stopped. Lipscomb testified that he told Hardaway why he stopped him and that Hardaway then revoked his consent to search. At that point, Lipscomb called for a drug dog to do a free air sniff, and the drug dog arrived in approximately three minutes. After the dog alerted to Hardaway's vehicle, Lipscomb searched the car, locating boxes of clear, plastic baggies, smaller baggies of what appeared to be marijuana, a digital scale, and $2,826 in cash. Lipscomb testified that approximately ten minutes elapsed from the time he initiated the stop until the drug dog alerted; that under normal circumstances it would have taken him approximately six to seven minutes to write a ticket; and that he did not smell or see marijuana, weapons, or any other illegal contraband during the stop.

In denying the motion to suppress, the trial court concluded that the stop was lawful based upon Hardaway's failure to maintain lane; that the officers did not unreasonably prolong the stop; that the drug dog arrived within ten minutes of the initial stop and very quickly alerted on Hardaway's vehicle; and that the search was lawful. Hardaway does not question the legality of the stop but argues that he was unlawfully detained by the officer.

> The Fourth Amendment protects a person's right to be secure against unreasonable searches and seizures. The touchstone of the Fourth Amendment is reasonableness. Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances. In order to pass constitutional muster, the investigative stop of a vehicle cannot be unreasonably prolonged beyond the time required to fulfill the purpose of the stop.[2]

---

[2] (Citations and punctuation omitted.) *Sommese v. State*, 299 Ga. App. 664, 668 (1) (683

"The question is whether the prolongation is reasonable or unreasonable. On this issue we should defer to the trial court unless the facts are truly egregious."[3] The evidence here does not demand a finding contrary to the trial court's conclusion that the officers did not unreasonably prolong the stop.

Lipscomb stopped Hardaway for failure to maintain lane and issued him a citation for that traffic violation. "[F]ailing to maintain one's lane justifies a stop of a vehicle for a traffic violation."[4] After his first conversation with Hardaway, Lipscomb returned to his patrol car and radioed for backup within 30 to 45 seconds of receiving Hardaway's license. Lipscomb testified that it appeared that Hardaway was attempting to conceal something because Hardaway said he was looking for his license but retrieved it from a different area of the car. Lipscomb began writing Hardaway's citation but did not complete it because he was waiting for the backup units to arrive.

Once the backup officers arrived, Lipscomb stopped writing the ticket and approached Hardaway's vehicle again, asking him to step out of the vehicle and about the presence of drugs or weapons therein, and for consent to search. "A police officer, having effected a valid stop of a vehicle, does not violate a driver's Fourth Amendment rights merely by inquiring about his possession of weapons or drugs or requesting his consent to search his vehicle for those weapons or drugs."[5] Hardaway gave and then revoked his consent to search, at which point Lipscomb summoned the drug dog, which arrived at the earliest, three minutes later, according to Lipscomb's testimony, and at the latest, five minutes later, according to the dog's handler's testimony. Lipscomb testified that he was still writing the ticket as they waited on the drug dog's arrival and that the entire encounter lasted no more than ten minutes.

Although not stated succinctly in his appellate brief, Hardaway essentially argues that the four minute delay from the time it would have taken the officer to write the ticket to the time the drug dog alerted constituted an unreasonably prolonged detention. The trial court correctly concluded, however, that a brief detention was authorized because it was reasonable for the officer to be suspicious in light of Hardaway's furtive movement at the initial point of the stop.[6] The trial court reasoned that this suspicion was heightened

---

SE2d 642) (2009). Accord *Langston v. State*, 302 Ga. App. 541, 543 (691 SE2d 349) (2010).

[3] (Footnotes omitted.) *Hayes v. State*, 292 Ga. App. 724, 729 (2) (c) (665 SE2d 422) (2008).

[4] (Footnote omitted.) *Spence v. State*, 263 Ga. App. 377 (1) (587 SE2d 766) (2003).

[5] (Citation and punctuation omitted.) *Byers v. State*, 272 Ga. App. 664, 666 (613 SE2d 193) (2005).

[6] See *Jones v. State*, 259 Ga. App. 849, 852 (578 SE2d 562) (2003) (evidence that defendant appeared to be hiding something along with his nervous behavior justified brief

when Hardaway attempted to explain that he was looking for his wallet then retrieved his license from a different part of the car and when Hardaway revoked his consent to search. The evidence supported the trial court's finding that, under the totality of the circumstances, the detention was not unreasonably prolonged.[7] Additionally,

> [t]he use of a drug sniffing dog to conduct a free air search around the exterior of a vehicle during the course of a lawful traffic stop does not implicate the Fourth Amendment under the United States Constitution. Our law is clear that it is permissible to conduct an open air search around a vehicle while a traffic stop is still in progress so long as the stop has not been unreasonably prolonged for the purpose of conducting the search.[8]

"Once the dog alerted, [Lipscomb] had probable cause to search [Hardaway's] vehicle."[9] Therefore, the denial of Hardaway's motion to suppress was proper as the evidence supported the trial court's finding that the officers did not unreasonably prolong the stop.[10]

2. Next, Hardaway challenges the sufficiency of the evidence as to his conviction of possession with intent to distribute marijuana. Upon review of Hardaway's challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[11] The evidence showed that Hardaway was in possession of clear, plastic baggies, smaller baggies of suspected marijuana, a digital scale, and $2,826 in cash. Officer Kenneth Adcock testified that in his capacity as a marijuana tester for the

---

detention). Compare *Bell v. State*, 295 Ga. App. 607, 610-611 (2) (672 SE2d 675) (2009) (in the absence of furtive conduct, officers had no reason to believe defendant and passenger were dangerous even though a baton was in clear view and the defendant appeared nervous).

[7] See *Langston*, supra.

[8] (Citations and punctuation omitted.) *Langston*, supra at 544. See also *Bowens v. State*, 276 Ga. App. 520, 522 (623 SE2d 677) (2005) ("reasonable and articulable suspicion is not required before a police officer may use a canine trained in drug detection to sniff the vehicle's exterior") (citation and emphasis omitted). Compare *Bennett v. State*, 285 Ga. App. 796, 798 (648 SE2d 126) (2007) (officer unreasonably prolonged stop when he did not question or issue a citation to the defendant about the reason for the initial stop, concerned instead about a potential violation that may not have been a crime, then waited for another officer to bring a written warning book and that officer's dog alerted on the car).

[9] *Langston*, supra at 545, citing *State v. Simmons*, 283 Ga. App. 141, 143 (640 SE2d 709) (2006). Accord *Becoats v. State*, 301 Ga. App. 768, 770-771 (688 SE2d 686) (2009).

[10] See *Butler*, supra.

[11] (Citation and punctuation omitted.) *Kimble v. State*, 301 Ga. App. 237, 240 (1) (a) (687 SE2d 242) (2009).

Douglas County Sheriff's Office, he tested a total of 11 bags, containing approximately 190 grams of a substance that tested positive for marijuana. There was no testimony offered by the officers as to their experience with marijuana distribution. Nonetheless, possession of a scale, baggies, and large amounts of currency along with drugs can constitute circumstantial evidence of intent to distribute.[12] Accordingly, this enumeration of error fails as well.

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED APRIL 27, 2011.

*Benjamin A. Davis, Jr.,* for appellant.
*David McDade, District Attorney, James A. Dooley, Assistant District Attorney,* for appellee.

---

[12] *Copeland v. State,* 273 Ga. App. 850, 854 (2) (616 SE2d 189) (2005); *Henderson v. State,* 184 Ga. App. 834, 836 (2) (363 SE2d 52) (1987) ("Circumstantial evidence that the total quantity of marijuana possessed by defendant was packaged in numerous small manila envelopes is sufficient for a rational trier of fact to find defendant guilty of possession with intent to distribute.") (citations omitted).